**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| CENEGENICS, LLC,<br><br>  Plaintiff,<br><br> v.<br><br>HEALTHGAINS, et al.,<br><br>  Defendants. | Case No. 2:19-cv-00438-GMN-BNW<br><br>**REPORT AND RECOMMENDATION** |

Presently before this Court is Plaintiff Cenegenics' Motion for Entry of Default Judgment against Defendants HealthGAINS dba AAG HealthGAINS (HealthGAINS) and AAG Miami LLC (AAG Miami). (ECF No. 32.) No opposition has been filed.

**I.    BACKGROUND**

Plaintiff Cenegenics asserts it has been a predominant industry leader in the field of age management medicine services for the last two decades throughout the Unites States. (ECF No. 32 at 2.) Cenegenics includes and incorporates scientific principles and evidence-based procedures that enable patients to live a more active and healthy lifestyle as they age. (*Id.*) Their services include an extensive physical evaluation and a fully customized program that fits the patient's lifestyle. (*Id.*) Cenegenics has marinated online websites since 1997. (*Id.*) These websites promote and advertise the Cenegenics brand and further provide consumers with links to

obtain an initial consultation with one of Cenegenics' physicians to start the evaluation process. (*Id*.)

Cenegenics owns a federal trademark registration (Registration No. 2,223,227) with the United States Patent and Trademark Office for the word mark "CENEGENICS" for use with age management medicine and with wellness medical treatments, including hormone replacement therapy, nutritional supplements and exercise counseling services. (ECF Nos. 1, 32 at 2-3.) It also owns a federal trademark registration (Registration No. 4,656,290)) with the United States Patent and Trademark Office for the "CENEGENICS" design mark for use with age management and health care services, such as nutrition counseling, hormone replacement therapy and wellness programs. (*Id*.)

Cenegenics asserts it has established valuable rights in its intellectual property through the continuous use of these trademarks on its websites and through various forms of advertising. (ECF No. 32 at 3.) Further, Cenegenics maintains their brand has gained substantial goodwill among customers. (*Id*.)

Defendants provide similar services and are direct competitors to Cenegenics in the age-management industry. (*Id*. at 4.) Plaintiff alleges Defendants have impermissibly used the Cenegenics Marks in commerce to advertise their competing services on the Internet in a manner likely to confuse consumers as to its association, affiliation, endorsement or sponsorship with or by Cenegenics. (*Id*.; *see also* ECF No. 32-1, 32-20 and examples of Defendants' use of Cenegenics word mark at ECF No. 32-2 through 32-15.) Moreover, Cenegenics claims Defendants purchased AdWords (or its equivalent) on Internet based search engines such as Google, and misdirected users into Defendants' websites. (ECF No. 32 at 4.) Further, Plaintiff asserts Defendants' websites contain clickable links for "Cenegenics Cost," "Cenegenic Alternative" "Cenegenics alternative in Miami!," "Cenegenics HGH Alternative," and "HealthGAINS Versus [sic] Cenegenics®." (ECF No. 32 at 4-5.) Lastly, Plaintiff explains that in many instances, Defendants don't use the "®" or any other indicia of Cenegenics' federally-protected trademark registration nor do they disclose that there is no affiliation, endorsement or sponsorship of Defendants' websites by Cenegenics. (*Id*. at 5.)

On March 13, 2019, Plaintiff filed a complaint against Defendants with the following claims: (1) Federal Trade Infringement, in violation of 15 U.S.C. § 1114, (2) Trademark Infringement , in violation of Nevada Common Law, (3) Federal Unfair Competition, in violation of 15 U.S.C. § 1125(a), and (4) Deceptive Trade Practice, in violation of Nev. Rev. Stat. Chapter 598.[1] (*Id*.) Defendant HealthGAINS was served on March 29, 2019 and Defendant AAG Miami was served on April 30, 2019. (ECF Nos. 12, 19.) Neither Defendant answered.

On June 13, 2019, Plaintiff filed a Motion for an entry of default against Defendants. (ECF No. 27.) On April 14, 2019, the Clerk of Court entered a default against Defendant HealthGAINS. (ECF No. 18.) On June 14, 2019 the Clerk of Court entered a default against Defendant AAG Miami. (ECF No. 30.)

This motion is the result of Defendants' failure to answer or defend against Cenegenics claims. Cenegenics seeks a permanent injunction enjoining Defendants from (1) displaying the Cenegenics mark on their website or promotional materials except for use in connection with lawful comparative advertising in a non-misleading manner, (2) purchasing "AdWords" containing the Cenegenics marks except for use in connection with lawful comparative advertising in a non-misleading manner, (3) making and/or publishing false, misleading, or disparaging statements about Cenegenics and its products and services, (4) unfairly competing with Cenegenics by further acts of infringement and unauthorized use of the Cenegenics marks, and (5) falsely suggesting any affiliation or endorsement by Cenegenics of Defendants' products and services by further acts of infringement and unauthorized use of the Cenegenics marks, pursuant to 15 U.S.C. § 1116 and Rule 65(d) of the Federal Rules of Civil Procedure. Lastly, Cenegenics seeks to recover its reasonable attorneys' fees and costs from Defendants pursuant to 15 U.S.C. § 1117 and Federal Rule of Civil Procedure 54(d).

**II.     ANALSYIS**

   **A.  Default Judgment**

---

[1] Cenegenics voluntarily dismissed Defendant Heathgain Clinics LLC without prejudice on June 24, 2019. (ECF No. 31.)

Under Federal Rule of Civil Procedure 55(b)(2), the Court may enter default judgment if the Clerk previously has entered default based on the defendants' failure to defend. After entry of default, the factual allegations in the complaint are taken as true. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). Whether to grant a default judgment lies within the Court's discretion. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). In deciding whether to enter a default judgment, the Court considers factors such as:

> the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id*. at 1471-72. A default judgment generally is disfavored because "[c]ases should be decided upon their merits whenever reasonably possible." *Id*. at 1472.

Default judgment is appropriate under the circumstances in this case. The complaint in this case was filed almost a year ago. (ECF No. 1.) Defendants never participated in this case despite being served with the Complaint (ECF No. 12, 22.) Given Defendants failure to participate in this case, Plaintiff would be prejudiced by having to expend additional resources litigating an action that appears to be uncontested.

Cenegenics has alleged meritorious claims against and Defendants. (*See* ECF No. 32 at 9-11; ECF No. 32-1, 32-20.) Defendants' failure to respond to those allegations, resulting in the Court-entered default, establishes Defendants' liability for each of Cenegenics' claims. *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990) (entry of default "conclusively establishes the liability" of the defaulting defendant). *See also Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) (by failing to answer or otherwise respond to complaint, defendants deemed to have admitted truth of plaintiff's averments as to liability).

As to the remaining factors, the Complaint sufficiently sets forth the Plaintiff's claims under the liberal pleading standard in Rule 8 of the Federal Rules of Civil Procedure. Plaintiff does not seek monetary damages but seeks attorneys' costs and fees. Given Defendants' failure to

participate in this case, a dispute over any material facts is unlikely. Further, nothing suggests that the entry of default in this case is due to excusable neglect. Despite being served with process regarding the litigation at issue, Defendants have not responded. As to HealthGAINS, they have not attempted to communicate with Cenengencis or its counsel. (ECF No. 32-1, ¶ 19.) In addition, Plaintiff alleges Defendants are aware of the lawsuit given they have taken steps to alter the webpages Cenegnenics identified in the Complaint. (*Id.*, ¶¶ 4-18, 26.) As to AAG Miami, Plaintiff alleges they have had telephonic and e-mail communications with its owner, Mr. Alberto Galante, regarding the Complaint which indicates his awareness of the lawsuit. (*Id.*, ¶ 21; ECF No. 32-17.) Thus, it appears Defendants are making a conscious decision not to participate in the case. Given their failure to participate in this case, a decision on the merits is "impractical, if not impossible." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002.) Entry of a default judgment therefore is appropriate.

**B. Permanent Injunctive Relief**

The Lanham Act permits a court to grant injunctions "according to the principles of equity and upon such terms as the court may deem reasonable" to prevent further trademark infringement. 15 U.S.C. § 1116; *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006). A plaintiff seeking a permanent injunction must show "(1) that it has suffered an irreparable injury, (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 879 (9th Cir. 2014) (quotation omitted). "[A]ctual irreparable harm must be demonstrated to obtain a permanent injunction in a trademark infringement action." *Herb Reed Enterprises, LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013).

A permanent injunction is appropriate under the circumstances of this case because Plaintiff has shown irreparable injury. Taking the facts in Plaintiff's complaint as true and drawing all reasonable inferences from them, Plaintiff demonstrates it has suffered, and will continue to suffer, irreparable harm due to Defendants' use of the infringing mark. Specifically,

Plaintiff demonstrates that since 1997, it has been building its reputation by continuously using the "Cenegenics" mark nationwide. Without an injunction, Cenegenics would suffer irreparable injury from the ongoing damages to the value of the Cenegenics marks, their goodwill and diversion and confusion of customers. In addition, Defendants continue to maintain numerous infringing websites. (ECF No. 32-1, 32-8 through 32-15.) Lastly, in the absence of a permanent injunction, Defendants could easily resume their infringing activity. *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167 (2000).

Monetary damages would be insufficient to compensate Plaintiff for the injury to its goodwill. Further, Defendants have been on actual notice of the existence of Plaintiff's marks since, at the very least, the service of the complaint, Yet, Plaintiff represents that while Defendant HealthGAINS has taken some steps to alter the websites names in the complaint, they continue to use the Cenegenics mark in many others. (ECF 32-1, ¶ 20.) Thus, there is no indication that Defendants will stop using the infringing mark without injunctive relief.

As to the third and fourth factors, the balance of hardships favors Cenegenics, who will lose profits and goodwill, while an injunction will only proscribe Defendants' infringing activities. Lastly, an injunction is in the public interest because "there is greater public benefit in securing the integrity of Plaintiffs' copyrights than in allowing [Defendant] to make Plaintiffs' copyrighted material available to the public" (*Disney Enters., Inc. v. Delane*, 446 F. Supp. 2d 402, 408 (D. Md. 2006)) and because the "public has an interest in avoiding confusion" caused by the trademark infringement (*Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 n.5 (9th Cir. 2009)). A permanent injunction, therefore, is appropriate.

### C. Attorney fees and costs

The Lanham Act also allows a court to award reasonable attorneys' fees to the prevailing party in "exceptional cases." *See* 15 U.S.C. § 1117(a); *Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir.2000). Although the statute does not define the term "exceptional," generally a trademark case is exceptional when the court finds the defendant acted maliciously, fraudulently, deliberately, or willfully. *Id.*, *see also Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1216 (9th Cir.2003); *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1023 (9th Cir.

2002) (district court determined by entry of default judgment that defendant's act were committed knowingly, maliciously, and oppressively, and with an intent to injure).

In addition to reasonable attorneys' fees, the Lanham Act also entitles Cenegenics to an award of costs. *See* 15 U.S.C. § 1117(a) ("When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office [or] a violation under section 1125(a) or (d) . . . shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled . . . to recover (3) the costs of the action.").

Based on the facts in this case, Plaintiff can demonstrate that this case fits the definition of "exceptional cases." Here, the Complaint clearly alleges that Defendants' conduct was deliberate and willful. (*See* ECF No. 1, ¶¶25, 34, 46.) The Ninth Circuit held that entry of default judgment can provide the basis for a finding that the defendant knowingly and willfully infringed on the plaintiff's trademarks. *Rio Properties, Inc.,* 284 F.3d at 1023; *see also Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) (holding that the grant of attorneys' fees under 15 U.S.C. § 1117(a) was proper). In default situations there is no affirmative duty on the part of Plaintiffs to show Defendants' intent. Lastly, given the violation of Lanham Act (by using the Cenegenics Marks in a manner that is likely to cause confusion, mistake or deception as to the source of origin of the Defendants' products or services) remains uncontested, Cenegenics is entitled to recover the costs of this action. *See* 15 U.S.C. § 1125(a).

### III. RECOMMNEDATION

IT IS THEREFORE RECOMMENDED that Plaintiff Cenegenics's Motion for Entry of Default Judgment against Defendants HealthGAINS and AAG Miami (ECF No. 32) be GRANTED. And that judgment be entered against Defendants for: (i) willfully infringing Cenegenics' registered trademark rights as represented in U.S. Trademark Registration Nos. 2,223,227 and 4,656,290 in violation of 15 U.S.C. § 1114; (ii) willfully violating Cenegenics' common law rights in the Cenegenics marks in violation of Nevada law; (iii) willfully committing unfair competition in violation of 15 U.S.C. § 1125(a); and (iv) willfully committing deceptive trade practices and consumer fraud in violation of Nevada Revised Statutes (NRS) Chapter 598.

1      IT IS FURTHER RECOMMENDED that Defendants HealthGAINS and AAG Miami, and all persons or entities acting in concert with Defendants during the pendency of this action and thereafter, be permanently enjoined from (i) displaying Cenegenics' trademarks anywhere on Defendants' website or promotional materials and/or using the Cenegenics marks in the source code for such websites, except for use in connection with lawful comparative advertising in a non-misleading manner (ii) unfairly competing with Cenegenics by further acts of infringement and unauthorized use of Cenegenics' marks by such acts as purchasing "AdWords" containing the Cenegenics marks, except for use in connection with lawful comparative advertising in a non-misleading manner, (iii) making and/or publishing false, misleading, or disparaging statements about Cenegenics and its products and services, (iv) otherwise unfairly competing with Cenegenics by further acts of infringement and unauthorized use of the Cenegenics marks, and (v) falsely suggesting an affiliation or endorsement by Cenegenics of Defendants' products and services by further acts of infringement and unauthorized use of Cenegenics' marks pursuant to 15 U.S.C. § 1116 and Rule 65(d) of the Federal Rules of Civil Procedure.

IT IS FURTHER ORDERED that Cenegenics recover its reasonable attorneys' fees from Defendants pursuant to 15 U.S.C. § 1117. Cenegenics shall file the information required by Local Rule 54-14 in support of its fee award amount within fourteen (14) days after the date of this Order.

IT IS FURTHER ORDERED that Cenegenics recover its reasonable costs from Defendants pursuant to Federal Rule of Civil Procedure 54(d). Cenegenics shall file a bill of costs and disbursements on the form provided by the clerk pursuant to Local Rule 54-1, no later than fourteen (14) days after the date of this Order.

**IV.  NOTICE**

This Report and Recommendation is submitted to the United States District Judge assigned to this case under 28 U.S.C. § 636(b)(1). A party who objects to this Report and Recommendation may file a written objection supported by points and authorities within fourteen days of being served with this Report and Recommendation. Local Rule IB 3-2(a). Failure to file

a timely objection may waive the right to appeal the District Court's Order.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: January 8, 2020

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE